next in the case of United States against Beltran-Leon. Mr. Blanken. Good morning, your honors. Counsel, may it please the court. The sentencing hearing in this case was not a typical sentencing hearing and this is not a typical appeal from a sentencing. This is a sentencing that I don't think there's any better term for it than it went off the rails. So much so that as part of the sentencing hearing, the district court considered inappropriate and irrelevant information as part of the sentencing. For example, the district court considered the number of people that it stated 30,000 people in Mexico killed during related to drug violence in general, speculated about the murders of members of the media by cartels, although not specifically identifying even the cartel that the defendant was associated with. Mr. Blanken, can I ask you a question though? What really bothers me about this? There's some very troubling things. I agree with you in that respect in the sentencing transcript, but when all was said and done, the district court gave Mr. Beltran-Leon a sentence of, if I'm remembering, 300 months. And I wonder if you have alerted your client to the fact that if he wins, as it were, resentencing, he might be worse off. Judge, we have discussed that with Mr. Beltran and particularly in the sense of one of the issues here is there are, of course, all these troubling comments and we don't know, at least the defense takes the position, that while it's clear from records that these troubling comments impacted the sentence, we don't know the extent to which they did or the extent to which the judge either accepted or rejected the allegations of torture. I think it's pretty easy to figure that one out, to be honest. The government asked for 35 years on a guideline sentence of life. And the court then sentenced Beltran-Leon to 28 years. If the court wasn't crediting him based on his torture argument, there's nothing else here that would account for that seven-year break. It seems fairly clear that the court was willing to give him some break, even though it found the claim not entirely credible. What more do you think the court was required to say? And I really want to second Judge Wood's question to you, because it is very possible that this could go back, and of course it will go back to a different judge, because Judge Castillo isn't there any longer, and one of those judges could give him life. Judge, let me respond to your first point, and of course we can if the court wants to. But the other reason that our position was he should have gotten less than the 28 years that he got was because of relative comparative sentencing for defendants and the need to avoid unwarranted sentencing disparities. One of the individuals who testified at Mr. Beltran's sentencing was Manuel Valencia. That gentleman received a sentence of less than Mr. Beltran, and had not cooperated at that time. He entered a blind plea without a cooperation plea. And he, on the witness stand before Judge Castillo, admitted to thousands and thousands more kilograms of drugs of all kinds than Mr. Beltran. He was a much higher member of the cartel. He was considered partners with Chapo. He was so influential and wealthy that he loaned three million dollars to Chapo. And when we argued to the district court that of course Mr. Beltran's sentence should start lower than his, based solely on unwarranted sentencing disparities and comparative sentencing, what Judge Castillo says is well I can't get into the mind of Judge Guzman. That would completely rule out the requirement of avoiding unwarranted sentencing disparities. And it also brings up a salient point here which is we cannot get into the mind of Judge Castillo. I think the primary difference between our brief and the government's brief is the sentencing and believes that the the ones that we're complaining about were not bases for the sentencing. I frankly don't know how they know that. We haven't taken the position that we know definitively. Our position is that you cannot tell it from all appearances from the transcript and frankly from being there in person. It did appear that all of these troubling comments related to the sentencing. Why do I say that? They were all part of the same statement about sentencing. The judge listed several things that were in its head in the whatever three pages it is that he announces the sentence, such as Mr. Beltran did not cooperate. Mr. Beltran's acceptance of responsibility maybe wasn't as good as the judge had hoped for. Mr. Beltran was convicted and found to have distributed a large quantity of drugs. All of those things the government says of course that was the basis for the sentencing and that's what the judge relied on. But things like the personal hurt that the judge feels every day based on his ethnicity, which is in the same section. It's one of the thoughts he expresses right before sentencing. The judge says well disregard that as a just a side comment about that. They say that disregard the issues about the Mexican media members who may have been killed and all of those sorts of things holding Mr. Beltran accountable for all drug violence in Mexico for some unknown period of time. I think we're right here and frankly I think my personal view is that a judge who accepts the allegations of the serious psychological and physical terrible torture and also engages in comparative sentencing particularly with regard to Mr. Valencia could very well come to a lower sentence. Mr. Beltran was not a very high ranking member of the cartel. He was found to have engaged in suggestion that he was the kind of person who could have ordered cartels or cartel people to engage in violence against the government. All of these were extraneous issues. I've been doing this for a while now. I've never been involved in a case where a judge waved around some unknown piece of paper that he was relying on for sentencing and I've certainly never been involved in a case where a judge referenced its own ethnicity and the personal hurt that it felt as a result of cartel violence. So I understand the court's concerns and like I said we can discuss that with Mr. Beltran again but this is a case that cries out for a resentencing and I think that's what should happen here. I see that I'm running into my rebuttal time so I'll save the rest. Certainly Mr. Blagan. Ms. Alexakis. Yes Judge. May it please the court. My name is Georgia Alexakis and I represent the United States. This court should affirm the defendant's below guideline sentence. It was well justified in light of the section 3553a factors expressly considered by the district court. This was not a sentencing hearing that went off the rails and we can tell what the language that the court used. But Ms. Alexakis I have to say going over the line to say in effect I'm of Mexican descent I feel personal hurt when I see this number one and when literally as the behavior in Mexico implying that the reason that the torture took place was revenge not just to get information. These are not your daily fare for sentencing review. I find them all terribly troubling. Judge if I could address each of those concerns in turn. First with respect to the comment that the judge made the reference to his own heritage and the personal hurt that he felt. From the government's perspective the court was bringing in his personal experience as a way to highlight the severity of the offense. But why is that okay? What we're not allowed to do. Exactly what we're not allowed to do. I think I would disagree. Why is it any different from from the judge who said you know you've been dealing drugs in my neighborhood and I used to walk down the street and people like you have ruined it. You know that was bringing personal experience and said that's out of the record. That's not the way we try to achieve the best we can impartial justice in this country. And judge I believe what you're referring to are a line of cases. Figueroa, Smith, there's a Wilson case as well. Right. And I understand again the court's concern but the sentencing hearing here differed from those cases and in particular it's because of the nature of the offense the defendant here committed. I don't agree with you at all. I think if you were going to get anywhere with this you have to admit that that remark was out of line. That you can't be. Let's take today's world you know where there are occasionally riots that get out of hand when certain incidents happen. The murder of George Floyd or whatever you want to say. You wouldn't want a judge of a particular ethnicity saying I'm going to impose a sentence because you know I'm one of that group. That's not the way we do it. I don't disagree with that judge but I think here what Judge Castillo was trying to do is draw attention to the number of Mexicans who have died as a result of cartel related violence. Are we supposed to take judicial notice of that? Is that something that's so far beyond dispute that he can waive an article around that he never shows anybody? I think your honor here defense counsel agreed with the court's proposition. I mean if you part of the transcript the judge is hammering him. Defense counsel is trying to placate him and saying yeah you know there's a big problem but he's certainly not saying you know I waive the right to see whatever it is you're relying on. Judge I think if it was one offhand comment by one defense lawyer I might be inclined to agree but here Mr. Beltran was represented by at least two different lawyers at the sentencing hearing. I know what you're talking about but I just I don't read it that way. I mean the judge is really hammering him when defense counsel tries to say for instance when he says why do you think torture happened? The defense counsel says to get information. He says no you know blah blah blah you know it's because so many members of the SEMAR group have been killed. And defense counsel responds the first defense lawyer responds by agreeing with that proposition. The second defense lawyer responds by agreeing with that proposition again. There was evidence that was presented at the sentencing hearing regarding the violent nature of the cartel and I think the reason why there isn't a significant dispute as to whether 30,000 Mexicans have died as a result of cartel-related violence or whether Mexican military personnel have died as a result of cartel-related violence is because those inferences were supported by the evidence that were presented at the sentencing hearing and I think that is why even today the defense counsel has yet to truly test that. Those statements of the district court judge. I'm sorry judge I didn't hear you. What evidence supported those estimates of the situation in Mexico assuming for the sake of argument right now that the situation in Mexico was relevant to Mr. Beltran-Leon's sentencing? There was no evidence that those particular numbers were supported by it. There was evidence though that the cartel was engaged in violent operations. The district court credited testimony that armed bodyguards appeared at business meetings, that sicarios were employed, hitmen were employed by the cartel, that one of Mr. Beltran's co-conspirators ordered the murder of 13 to 15 individuals as a result of his drug trafficking operations. But the district court chose not to credit some of that and despite the fact that the district court didn't rely on the alleged murder in I forget which city, you know your brief keeps mentioning it as though it was a fact the district court found. Judge I apologize if that was the impression that the government's brief left. I believe the government's position is that there was evidence that indicated that Mr. Beltran was involved in a murder that took place in Cuyacán. I agree that the district court did not actually find that he committed that murder. The district court did make findings that the cartel of which the defendant he also found was a high-ranking leader. I'm not sure why defense counsel disputes that. The district court did find that Mr. Beltran was a high-ranking leader of the cartel, that this was a sophisticated, those were the district court's words, a sophisticated drug trafficking transnational operation and the district court found that the use of firearms was used by the cartel for quote safety and protection. And so from there I think it's a fair inference that the district court drew to conclude from those findings that the cartel of which again the defendant was a high-ranking member was responsible for violence in Mexico and the district court referenced that violence in Mexico in the course of referencing his own the court clearly implied that Beltran did not testify about the torture because counsel was unwilling to put him on the stand where he might lie or hide the truth. Where did the court correct its improper inference that Beltran did not testify for reasons quote known to any lawyer in the business? Sure. I'm a lawyer in the business I don't know who he's talking about. And I agree judge that the district court wasn't clear, did not clarify that comment in that instance. Later on however in the transcript and it's in particular on page 293 of the transcript the district court expressly says that he did not hold the defendant's decision to testify against him and he says that he understands that he has a right not to testify. I'm prompted by the government as I recall. That is true judge but I think that this court can still credit that explanation that because in particular because the district court acted consistent with this explanation. It credited the defendant's allegations of torture, it treated it as mitigation despite the lack of testimony and the holes in the affidavit and it then awarded him a downward departure as a result of that mitigation. And so when the explanation is consistent. Did judge Castillo ask defense counsel whether the principal arguments in mitigation had been addressed? We've warned courts repeatedly to do so. I just didn't see that inquiry in the record. I don't believe it is in the record either judge Rovner. I do believe though that judge Castillo did address the principal argument in mitigation which was the defendant's experience or allegations excuse me the defendant's allegations of torture. I think that the district court in particular and his colloquy with the second defense lawyer understood expressed agreement understanding that the argument the defendant was advancing was that the torture he experienced should be analogized to an argument that a mitigating factor could be the conditions of confinement. And so I think the record is clear that the district court did consider that argument in mitigation. And unless there are any further questions at this time the government would ask that the defendant's sentence be affirmed. Thank you. Anything further Mr. Blanken? Yes briefly your honor. So the court is correct there was no concession by the defense that the specific numbers being quoted by judge Castillo were correct. There was an effort to steer the discussion back to you know the issue regarding the torture and so there was some general agreement but yes Mexican military people have been killed and people in Mexico but the numbers were never agreed to. But notably the effort was to steer the court back to a somewhat more reasonable thought about why Mexican officials might use a lot of force when arresting someone. The court the district court never concluded whether or not Mr. Beltran was tortured. You can read it in the judge's conclusion. He says something along the to decide if it happened or not. And then also says I'm going to give a modest downward adjustment or modest modification of the sentence for what may have happened. The judge never decided whether it happened or not and that's one of the ways that we it's of course impossible to tell whether all these other extraneous comments affected it. The fifth amendment issue was frankly stunning. I was going to say what Judge Brokner has already said which is there is no consensus in the defense bar as to why you don't call your client as in a case in every instance. There is no one thing that all lawyers know. I will tell you the primary reason is in a trial because you think your argument is better that the government didn't prove the case. There is no consensus among the bar that oh I know my client is lying or he's going to lie that's why he won't call and the judge never retracted that adverse inference. Of course it was he did make a comment about the fifth amendment saying I pulled that against him. That was after the sentence had been proposed. All of the supervisory police conditions had been read and at of course the government's property. These facts that the judge was relying on are waving around these numbers we don't know if some of them were before Mr. Beltran was born. We don't know if some of them were when he was 10 years old. We know nothing about that. The government complains that we haven't contradicted it. How would we go about that? We don't know the source of it and I will point out that the judge did attach some articles to his ruling that the case could not be dismissed as a result of torture. The one article from Amnesty International presented reasons for why torture occurs and the reasons were to get information from people and for public confidence. There was no there's no so the idea of it's done as revenge for Mexican Marines getting killed was not even in the one article that the judge cited in something that he published. I see that my time is up but I thank the court for its attention. Thank you Mr. Blegin. The case is taken under advisement.